## Village of Edgar v. Mary Mills.

[Filed September 15, 1891.]

Municipal Corporations: Unsafe Sidewalks. In an action
against a municipality for damages of a serious nature to the
plaintiff, caused by falling through a defective sidewalk, the tes-
timony fully established the unsafe and dangerous character of
the walk at the place where the injury occurred, and the serious
nature of the injury, and failed to show contributory negligence
on the part of the person injured, and there being no material
error in the record, the judgment is affirmed.

Error to the district court for Clay county.  Tried be-
low before Morris, J.

*Wm. M. Clark* and *S. W. Christy*, for plaintiff in error.

*O. H. & A. R. Scott, T. S. Fisk,* and *S. A. Searle, contra.*

Maxwell, J.

This action was brought in the district court of Clay
county by the defendant in error against the plaintiff in
error to recover for personal injuries sustained by her by
falling through a defective sidewalk in that village.

The answer, which is very long, in effect, denies the
truth of the petition, and pleads contributory negligence
of the plaintiff below.

The jury returned a verdict for $2,000, from which the
court required the plaintiff below to remit the sum of
$800.  The court thereupon overruled the motion for a
new trial and rendered judgment for $1,200 on the ver-
dict.

A large number of errors are assigned in this court, but
the principal one relied upon is the want of notice of the
defective condition of the walk.

Charles A. Fuller, a witness called by the defendant in error, testified in his direct examination as follows:

Q. What is your name?

A. Charles Fuller.

Q. Where do you reside?

A. I live in Edgar.

Q. How long have you lived there?

A. Almost two years. I have been at work in Lincoln.

Q. Do you know where the sidewalk is where this accident occurred to the plaintiff?

A. Yes, sir.

Q. By whom were you employed at the time the sidewalk was constructed?

A. At the time it was constructed I was in the employ of Mr. Whitten.

Q. That was the man who owned the property adjoining it?

A. Yes, sir.

Q. For what is that property used?

A. Lumber yard.

Q. Whitten is proprietor of the lumber yard?

A. Yes, sir.

Q. What, if anything, did you do in the construction of that walk?

A. I built it.

Q. Go on and state to the jury how you built it and all about it.

*       *       *       *       *       *       *

Q. State the nature of the materials used in constructing it.

*       *       *       *       *       *       *

A. I built the walk out of pieces of 2x4 that I used for stringers. Some of them were two and a half feet long, and some I used were sixteen feet long, and they were pieces that had been under the lumber pile and taken out

and thrown to one side. It was waste lumber and not very sound pieces. I thought at the time that they were not fit to go under the walk. I used the pieces for the walk, and plank that I got off this same pile of lumber. It was old pieces of lumber.'

Q. It was refuse stuff?

A. Yes, sir.

Q. At whose direction did you use this kind of lumber?

A. Mr. Whitten's.

Q. What was the thickness of some of these boards?

A. Half an inch thick.

Q. But what portion of them or what number of them would range that thickness?

A. I suppose the biggest part of them were thin lumber. Some of them were a little over that.

Q. What kind of nails did you use in constructing that walk?

*        *        *        *        *        *        *

Q. Tell the nature and kind of nails.

A. We used some as large as 10 and some as small as 4 shingle nails.

Q. At whose direction did you use that lumber?

A. Whitten's.

Q. At whose direction did you use these nails?

A. Whitten's.

Q. State whether or not Whitten was the owner of these lots adjoining this particular place?

A. I suppose he was.

Q. State whether or not, during the construction of that walk, you apprised Whitten as to the nails you were using and asked him for others.

*        *        *        *        *        *        *

Q. State whether or not you were on the spot at the time or immediately after the accident.

A. I was there a little after.

Q. You saw this plaintiff there before she had been moved?

A. Yes, sir.

Q. State the condition of the walk right there where you found this plaintiff lying, or at the spot pointed out to you.

A. The board was broken in two.

Q. Tell the jury how that board was, so you can make them understand; just say how.

A. It was broken between the stringers, next to the lumber yard, and next to the house.

Q. How near the inside of the end of the board?

A. I suppose a foot or a foot and a half. Something like that; I don't just remember just how far from the end.

Q. How wide was the walk at that place?

A. I don't just remember how wide it was.

Q. About how wide?

A. About three and half to four feet, may be.

Q. Three and a half to four feet.

A. Yes, sir, may be.

Q. How was the walk made and laid? Show which way the stringers run.

A. North and south.

Q. Lengthwise with the street?

A. Yes, sir.

Q. The boards were nailed how?

A. They were nailed cross-wise with the stringers.

Q. That made each board about how long?

A. About four feet, I think; something like that.

Q. Did you examine that broken board at the time of this accident?

A. Yes, sir; I looked at the board.

Q. Just describe the appearance of that break to the jury.

A. It looked like an old break in the board. It may have been a splinter that was broken new, but as near as I can remember it was an old break, and looked like it had been broken for some time.

Q. How thick was that board?

A. About half an inch thick.

48

Q. State how much that walk was traveled, whether it was a generally traveled walk.

A. Yes, sir; I think it was traveled a good deal.

Q. How long have you lived in Edgar?

A. About two years.

Q. You may state over what walk the people would travel in going from the northeast part of Edgar to the St. Joe depot?

A. I think they traveled that walk. It was the only walk they would travel without going out of their way.

Q. State whether or not you noticed that walk for a few days or a short time before this accident occurred.

A. Yes, sir.

Q. What had been its condition?

A. I noticed the walk was in a very poor condition.

Q. Please examine that map which I now hand you, this being north, south, east, and west (indicating). You may state whether or not this plat shows the way in which the streets run in that vicinity of the town?

A. Yes, sir.

Q. How many poor places, or bad places, was there in this particular walk where this injury occurred, adjacent to the lumber yard at the time of the accident?

A. There were two or three places that were bad.

This testimony is not denied in substance. It is evident that the walk was in an unsafe and dangerous condition from the first, and no attempt was made to make it safe. The injury was of a very serious nature, and the judgment is not excessive considering the injury.

It is unnecessary to review the various assignments at length. No error sufficient to justify the reversal of the judgment has been pointed out, and none is apparent. The judgment of the district court is

AFFIRMED.

THE other judges concur.